501.18134/MGD

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
_____

AMERISURE INSURANCE COMPANY,

     Plaintiff,

v.                                 CIVIL ACTION NO.:

HARDAWAY CONSTRUCTION CORP.;
DUNES CLUB VILLA COMPANY;
DUNES CLUB VILLAS OWNERS
ASSOCIATION, INC.; C.J. GIDEON,
trustee of the C.J. Gideon Jr. Revocable
Trust; CECILE GIDEON, trustee of the
Cecile Gideon Revocable trust; LUCILLE
M. RAMSEY, an individual; E. STEPHEN
RAMSEY, an individual; VALLEY FORGE
INSURANCE COMPANY; and TRAVELERS
INDEMNITY COMPANY,

     Defendants.
_____

## COMPLAINT FOR DECLARATORY JUDGMENT
_____

COMES NOW the Plaintiff, Amerisure Insurance Company ("Amerisure"), by and

through the undersigned counsel, and seeks a declaration that it has no duty to

indemnify or continue to defend Defendant Hardaway Construction Corp. ("Hardaway"),

Dunes Club Villa Company ("DCVC") or any other person or entity claiming to be an

insured for the claims Defendants Dunes Club Villas Owners Association, Inc.

("DCVOA"), C.J. Gideon, Cecile Gideon, E. Stephen Ramsey and Lucille Ramsey have

filed against Hardaway, DCVC and others in the Circuit Court of the Fourth Judicial

Circuit, in and for Nassau County, Florida, Case No. 09-CA-493 (the "Lawsuit"), by

reason of the fact that the claims are specifically excluded from coverage under the

subject policy of insurance or are not otherwise covered pursuant to the policy's terms and conditions.   For its Complaint for Declaratory Judgment, Amerisure states the following:

## I.

## PARTIES

1.01.   Plaintiff Amerisure is an insurance company incorporated in and existing under the laws of the State of Michigan.   Amerisure maintains its principal place of business in Michigan.

1.02.   Defendant Hardaway is a construction company incorporated in and existing under the laws of the State of Tennessee.   Hardaway maintains its principle place of business in Tennessee.   Hardaway's registered agent for service of process in Florida is Corporate Creations Network, 11380 Prosperity Farms Road, #221E, Palm Beach Gardens, Florida, 33410 US.

1.03.   Defendant DCVC is a limited liability company incorporated in and existing under the laws of the State of Florida.   DCVC maintains its principle place of business in Florida.   DCVC's registered agent for service of process in Florida is James Hardwick, 5472 First Coast Highway, Suite 12, Amelia Island, FL 32034 US.

1.04.   Defendant DCVOA is a corporation organized and existing under the laws of the State of Florida.   DCVOA maintains its principal place of business in Florida. DCVOA's registered agent for service of process is Robert C. Muir, III, Amelia Island Management, 3000 First Coast Highway, Amelia Island, FL 32034 US.

1.05.   Upon information and belief, Defendant C.J. Gideon, Jr., is a resident of Tennessee who can be served at 624 Westview Avenue, Nashville, Tennessee 37205.

1.06.   Upon information and belief, Defendant Cecile Gideon is a resident of Tennessee who can be served at 624 Westview Avenue, Nashville, Tennessee 37205.

1.07.   Upon information and belief, Defendant E. Stephen Ramsey is a resident of Illinois who can be served at 221 Glenwood Road, Lake Forest, Illinois 60045.

1.08.   Upon information and belief, Defendant Lucille M. Ramsey is a resident of Illinois who can be served at 221 Glenwood Road, Lake Forest, Illinois 60045.

1.09.   Defendant Valley Forge Insurance Company ("Valley Forge") is a subsidiary of Continental Insurance Company.  Valley Forge is a corporation organized and existing under the laws of the State of Illinois and maintains its principal place of business in Illinois.  Valley Forge's registered agent for service of process in Florida is Chief Financial Officer, P.O. Box 6200 (32314-6200), 200 E. Gaines St., Tallahassee, FL 32399-0000 US.

1.10.   Defendant Travelers Indemnity Company ("Travelers") is a corporation organized and existing under the laws of the State of Connecticut and maintains its principal place of business in Connecticut.  Travelers' registered agent for service of process in Florida is Chief Financial Officer, P.O. Box 6200 (32314-6200), 200 E. Gaines St., Tallahassee, FL 32399-0000 US.

## II.

## JURISDICTION AND VENUE

2.01.   Amerisure brings this action for declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure as an actual case or controversy exists between the parties as to the applicability of a policy of insurance.

2.02. This Court has jurisdiction to hear this cause pursuant to 28 U.S.C. § 1332 as it is between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and cost.

2.03. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

### III.

### BACKGROUND

3.01.   DCVC was the developer of the Dunes Club Villas in Amelia Island, Florida, a construction project comprised of four eight-story residential buildings (the "Project").

3.02.   In 2001 and 2003,[1] DCVC hired Hardaway to serve as general contractor for the construction of Phases I and II of the Project, respectively.

3.03.   Both the 2001 and 2003 contracts include the AIA A201 – 1997 General Conditions which contains the following indemnity and insurance provisions:

§3.18 INDEMNIFICATION

§3.18.1        To the fullest extent  permitted by law . . . the Contractor [Hardaway] shall indemnify and hold harmless the Owner [DCVC]. . . from and against claims, damages, losses and expenses . . . arising out of or resulting from the performance of the Work, provided that such claim, damage, loss or expense is attributable to . . . injury or destruction of tangible property (other than the Work itself) but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor . . . or anyone for whose acts they may be  liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder . . .

§11.1 CONTRACTOR'S LIABILITY INSURANCE

---

[1]        Although the contract for Phase I was dated February 9, 2001, the month and day line in the agreement for Phase II is left blank.

§ 11.1.1     The Contractor [Hardaway] shall purchase from and maintain . . . such insurance as will protect the Contractor [Hardaway] from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable . . . .:

\*         \*         \*

.5      claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

\*         \*         \*

.7      claims for bodily injury or property damage arising out of completed operations; and

.8      claims involving contractual liability insurance applicable to Contractor's obligations under Section 3.18.

§11.2  OWNER'S LIABILITY INSURANCE

§11.2.1      The Owner [DCVC] shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

\*         \*         \*

§11.3.3      The Owner [DCVC] shall not require the Contractor [Hardaway] to include the Owner [DCVC] . . . as additional insured on the Contractor's Liability Insurance coverage under Section 11.1.

(Attached as Exhibit A)

3.04.   Both Phases I and II of the Project were completed prior to November 1, 2005.  Upon information and belief, Phase I was completed sometime before 2003 and Phase II was completed at some point prior to July 2005.

3.05.   Upon information and belief, Travelers provided coverage to Hardaway for the policy period effective October 1, 2002 to October 1, 2003.

3.06.   Upon information and belief, Valley Forge provided coverage to Hardaway for policy periods of October 1, 2003 to November 23, 2004 and November 23, 2004 to December 15, 2005.

3.07.   In 2005, Hardaway first purchased liability insurance coverage from Amerisure, which became effective on November 1, 2005.  Hardaway also purchased liability insurance coverage from Amerisure in 2006 and 2007.  The relevant policies include policy number CPP2033162000000 (the "2005 Amerisure Policy"), policy number CPP 2033162020000 (the "2006 Amerisure Policy"), and policy number CPP 2033162030007 (the "2007 Amerisure Policy") (collectively the "Amerisure Policies").  Copies of the declaration pages and relevant endorsements for these Policies are attached as Exhibit B.

**Underlying Lawsuit**

3.08.   On May 14, 2008, DCVOA, C.J. Gideon, trustee of the C.J. Gideon, Jr. Revocable Trust, Cecile Gideon, trustee of the Cecile Gideon Revocable Trust, E. Stephen Ramsey and Lucille M. Ramsey (the "Claimants") filed the Lawsuit, and a number of exhibits in support thereof, against DCVC, James O. Hardwick, Hardaway, Landsouth Construction, LLC, KBJ Architects, Inc., and Amelia Island Holding Company concerning the construction of the Dunes Club Villas.  On June 4, 2008, claimants filed their Amended Complaint, hereinafter "Underlying Complaint," which relied upon the same exhibits as the Lawsuit.  Both the Amended Complaint and the exhibits thereto are attached collectively as Exhibit C.

3.09.  In the underlying complaint, the Claimants state three claims against Hardaway: Count VII – Implied Warranty, Count VIII – Statutory Warranty, and Count IX – Violation of Building Code.

3.10.  Each of the claims against Hardaway alleges that Hardaway knew or should have known "**during the course of construction**," and therefore prior to the inception date of the 2005 Amerisure Policy, of the defects and deficiencies alleged therein and that the damages resulting from the alleged defects and deficiencies were reasonably foreseeable to Hardaway.  (Ex. C, Underlying Complaint ¶¶ 91, 99, 106 (emphasis added).)

3.11.  Count VII - Implied Warranty states that Hardaway breached its implied warranty that Phase I and Phase II of the project "would be constructed in a good and workmanlike manner, using good quality materials and construction practices" on the basis of the allegation that "Hardaway constructed and/or provided materials to Phase I and Phase II of the Project with various defects and deficiencies."  (Ex. C, Underlying Complaint ¶¶ 89, 90.)

3.12.  Count VIII – Statutory Warranty of the Underlying Complaint alleges that Hardaway breached the "statutory warranty of fitness as to the work performed and the materials supplied for the construction of Phase I and Phase II of the Project" it granted the DCVOA pursuant to § 718.203.   (Ex. C, Underlying Complaint ¶¶ 95, 101.) Specifically, Count VIII asserts that Hardaway both "failed to construct Phases [sic] I and Phase II of the Project in a good and workmanlike manner, using good quality materials and good construction practices" and "failed to construct Phase I and Phase II of the Project in accordance with the Project plans." (Ex. C, Underlying Complaint ¶¶ 96,

97.)  Count VIII accordingly alleges that Hardaway constructed and provided materials for Phase I and Phase II "with various defects and deficiencies."   (Ex. C, Underlying Complaint ¶¶ 98.)

3.13.  Both Count VII and Count VIII of the Underlying Complaint state that "during the course of construction," and therefore prior to the inception date of the 2005 Amerisure Policy, Hardaway knew or should have known that the following defects and deficiencies existed or occurred in Phase I and Phase II:

a. Improperly design and/or construction of the balconies, resulting in water leaks;

b. Installation of the double insulated glass in a manner not in accordance with the Project plans, resulting in condensation and water damage and increased costs for heating and cooling of the units;

c. Design and/or installation of the tile roofs in a manner that did not meet code;

d. Improper design and/or installation of the plumbing system resulting in inadequate water pressure;

e. Improper supervision of the construction which did not ensure that the work was being performed in accordance with the Project plans and specifications and in a good and workmanlike manner;

f. An elastomeric paint of finished exterior stucco was not installed as required in the Project plans;

g. Design and/or construction of the project in a manner that was not good or workmanlike manner or in accordance with acceptable construction industry practices;

h. Improper design and/or installation of certain windows in a manner that did not meet the applicable building code;

i. Improper design and/or construction of the parking garages resulting in the garages sustaining water damage and continuing to experience water intrusion;

j.      Exterior stucco cracks resulting in water intrusion and efflorescence on the exterior stucco;

k.      Improper design and/or construction of the Project in a manner that does not leave sufficient access to allow lifts to gain access to all areas of the Project necessary for maintenance;

l.      Improper design and/or construction of the balcony light fixtures, resulting in water intrusion;

m.      Improper design and/or construction of the planters resulting in water intrusion;

n.      Construction of the Project with an encroachment from an adjacent pool; and

o.      Improper design and/or construction of the storm retention improvements in a manner not in accordance with required codes and permits.

(Ex. C, Underlying Complaint ¶¶ 91, 99, 39.)

3.14.   Count IX – Violation of Building Code of the Underlying Complaint alleges that Hardaway "failed to construct and supply materials to the Project in accordance with the minimum building codes for the State of Florida."  (Ex. C, Underlying Complaint ¶ 105.)  Specifically, it alleges that "[t]he roof tiles on Phase I and Phase II do not meet code" and "[d]oors and windows in Phase II do not meet code," and that Hardaway knew or should have known that these defects and deficiencies existed "**during the course of construction**."  (Ex. C, Underlying Complaint ¶¶ 106 (emphasis added).)

3.15.   The Underlying Complaint relies upon various correspondence documents relating to the alleged defects and deficiencies which establish that Hardaway had knowledge of a number of defects and deficiencies prior to the inception date of the 2005 Amerisure Policy.  (*See* Exhibits to Underlying Complaint.)

3.16.   Exhibit L to the Underlying Complaint is an October 14, 2004 letter from DCVC to Hardaway which references work Hardaway has done with KBJ Architects to address a "Construction Solutions memo; the gutters; and Anderson Window Co." (October 14, 2004 letter from James Hardwick of DCVC to Hardaway.)  Exhibit K to the Underlying Complaint clarifies that the "Construction Solutions memo" referenced in Exhibit L refers to "an extensive inventory on the entire building envelope" which DCVC had hired Construction Solutions Group to perform.   (September 13, 2004 letter to James Hardwick of DCVC from Olav B. Kollevoll, Jr.)

3.17.   Exhibit L to the Underlying Complaint also states that a letter from Hardaway dated October 13, 2004, which is not attached to the Underlying Complaint, did not address a prior request from DCVC that Hardaway provide a "plan for testing to determine where the leaks are coming from – recommended cures/corrections and a schedule for the work to start and to be finished."   It further states that "[o]wners are asking if this problem exists on all the floors – will they have ceiling leak issues from units above and what about the mold issues."

3.18.   Exhibit M to the Underlying Complaint is a July 29, 2005 letter from Hardaway to DCVC in response to a June 29, 2005 letter from DCVC to Hardaway, which is not attached to the Underlying Complaint.  (July 29, 2005 letter from Bret S. O'Brien of Hardaway to James Hardwick of DCVC.)  This letter states that DCVC has a "mistake referenced in Phase 1 warranty work" and Hardaway references waterproofing work performed two units and tile work planned on those units.

3.19.   Hardaway also acknowledges that a leak had been previously found in Unit 2 South and that the tile was scheduled to be repaired in that Unit in Exhibit M to the Underlying Complaint.

3.20.   Also in Exhibit M to the Underlying Complaint, Hardaway further acknowledges that DCVC has apparently brought up an issue with the "Main Garage Windows" in Building 1, stating that Hardaway will check into it.

3.21.   Hardaway additionally acknowledges issues with drainage in Unit 1 North of Phase 2 in Exhibit M to the Underlying Complaint.

3.22.   Exhibit P to the Underlying Complaint is a January 9, 2006 letter to Hardaway from DCVC which lists several warranty items that remain problematic "**after a couple years of attempted resolution**."   (January 9, 2006 letter to Bret S. O'Brien of Hardaway from James Hardwick of DCVC (emphasis added).)   For Phase I, these include:

1.   Wood's water test fee is $4,200 (retainage)
2.   Handrail finish failing
3.   Stucco – finish cracking-leaking (paint)
4.   Balcony ceiling finish failing on 3 units
5.   Water in garage – wall, floor, ceiling, fan
6.   Water in east side fire stair landings
7.   Anderson window strip and leaks – now confirmed as a major leak issue
8.   Stucco arches and column capital discoloring and drips
9.   Ashwell report – warranty items – pool construction finishes
10.   Water leaks in 7 South, 2 South and 1 South (**2 years work on this**)

(emphasis added.)

3.23.   As to Phase II, Exhibit P to the Underlying Complaint lists the following warranty and repair work as remaining problematic "**after a couple years of attempted resolution**":

1.  Handrail finish failing
2.  Stucco discoloring – cracking and leaking
3.  Water in garage – wall, floor, ceiling, fan
4.  Water in east fire stair landing
5.  Andersen window mull strip, leaks – unit 7 South has experienced door leak problems
6.  The big issue is the tile installation being higher than the threshold, thus holding water in the tracks causing rust and discoloration to occur.

(emphasis added.)   The letter further states that Hardaway had "been working on the handrails and stucco issues."

3.24.   Moreover, Exhibit Q to the Underlying Complaint is a January 23, 2006 letter from the project architect to DCVC which references continuous water intrusion problems in balconies of Unit 7 of Phase I and states that Hardaway had removed and replaced waterproofing and tile on the balcony the previous year to address previous water infiltration problems.  (January 23, 2006 letter from Kim Argus, architect, to James Hardwick of DCVC.)

3.25.   Upon receiving notice of the claims set forth in the Underlying Complaint, Amerisure retained counsel for Hardaway and is providing a defense for Hardaway in the Lawsuit alongside Travelers and Valley Forge subject to a reservation of rights letter Amerisure issued at the inception of the claim on August 8, 2008, and updated on September 1, 2009, after the filing of the Underlying Complaint.

3.26.   In both its August 8, 2008 and September 1, 2009 reservation of rights letters, Amerisure specifically reserves the right to disclaim coverage based on the known loss or loss in progress doctrine and the fact that the damages did not occur during the relevant Amerisure Policy period, among other Policy provisions.

3.27.   Also in both its August 8, 2008 and September 1, 2009 reservation of rights letters, Amerisure specifically letters also cite the fact that the relevant Amerisure Policy does not cover property damage to "your work."

3.28.   Both the August 8, 2008 and September 1, 2009 reservation of rights letters to Hardaway from Amerisure additionally cite the "Fungi or Bacteria Exclusion" based upon the allegations of water intrusion in the Underlying Complaint which may possibly result in mold.

3.29.   In July 2009, DCVC tendered its defense and indemnity to Hardaway, alleging that Hardaway was required to and did name DCVC as an additional insured on its policy of insurance.

**IV.**

**COUNT I – DECLARATION THAT CLAIMS ARE NOT COVERED OR ARE OTHERWISE LIMITED**

4.01   Amerisure incorporates by reference each and every allegation made in the preceding paragraphs as though set for fully verbatim here and now.

4.02.   All of the Amerisure Policies provided coverage as follows:

> a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .
>
> b.   This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period no insured listed under Paragraph I. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in who or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any other "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any 'employee' authorized by [the insured] to give or receive notice of an 'occurrence' or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the 'bodily injury' or 'property damage; or

(3)    Becomes aware by any other means that 'bodily injury' or 'property damage' has occurred or has begun to occur.

4.03. All of the Amerisure Policies also stated under the heading "Exclusions" that:

This insurance does not apply to:

\*       \*       \*

b.      Contractual Liability

"Bodily Injury" or "property damage for which the insured becomes obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

\*       \*       \*

(2)      Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement . . . .

\*       \*       \*

l.  Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

4.04.  All of the Amerisure Policies also included the Contractor's Blanket

Additional Insured Endorsement, which provides that:

SECTION II  - WHO IS AN INSURED is amended to include as an insured any person or organization, called an additional insured in this endorsement:

1.      Whom you are required to add as an additional insured on this policy under a written contract or agreement relating to your business; or

2.      Who is named as an additional insured under this policy on a certificate of insurance.

However, the written contract, agreement or certificate of insurance must require additional insured status for a time period during the term of this

policy and be executed prior to the "bodily injury", "property damage", "personal injury" or "advertising injury" giving rise to a claim under this policy.

     \*     \*     \*

The insurance provided to the additional insures is limited as follows:

1.     That person or organization is only an additional insured with respect to liability arising out of:

     (a)     Premises you own, rent, lease or occupy, or

     (b)     Your ongoing operations performed for that additional insured, unless the written contract or agreement to the certificate of insurance requires "your work" coverage (or wording to the same effect) in which case the coverage provided shall extend to "your work" for that additional insured.

     \*     \*     \*

Ongoing operations, as respects this provision, does not apply to "bodily injury" or "property damage" occurring after:

(1)     All work including materials, parts or equipment furnished in connection with such work on the project (other th[a]n service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2)     That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

4.     Any person or organization who is an insured under the terms of this endorsement an who is also an insured under the terms of the GENERAL LIABILITY EXTENSION ENDORSMENT, if attached to this policy, shall have the benefit of the terms of this endorsement if the terms of this endorsement are broader.

     \*     \*     \*

Any coverage provided in this endorsement is excess over any other valid and collectible insurance available to the additional insure whether

primary, excess, contingent, or on any other basis unless the written contract, agreement, or certificate of insurance requires that this insurance be primary, in which case this insurance will be primary without contribution from such other insurance available to the additional insured.

4.05. The 2005 Amerisure Policy further included an endorsement entitled

"Exclusion – Designated Work" which states as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE
PART

SCHEDULE

Description of your work:

1.      The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of and "exterior insulation and finish system" (commonly referred to as a synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, doors, windows, roofing, fascia, soffit, gutters, flashings, coatings, caulkings or sealants in connection with such system.

2.      Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on any part of that structure.

This exclusion applies to "your work" described in Paragraph 1. or Paragraph 2. above performed by you or by others on your behalf.

For the purpose of this endorsement, an "exterior finish and insulation system" means an exterior cladding or finishing system used on any part of any structure, and consisting of:

a.      a rigid or semi-rigid insulation board made of expanded polystyrene or other materials, and

b.      the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate, and

c.      a reinforced base coat, and

d.      a finish coat providing surface texture and color.

This insurance does not apply to "bodily injury" or "property damage" included in the "products – completed operations hazard" and arising out of "your work" shown in the Schedule.

4.06.   The 2006 and 2007 Amerisure Policies further contained an endorsement entitled "Exclusion – Exterior Insulation and Finish Systems" which states as follows:

A.      This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1.  The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, Caulking or sealants in connection with such a system; or

2.   "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

B.      The following definition is added to the Definitions Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1.  A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2.   The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3.  A reinforced or unreinforced base coat;

4.   A finish coat providing surface texture to which color may be added; and

5.   Any flashing, caulking or sealant used with the system for any purpose.

4.07.   All of the Amerisure Policies also included a "Fungi or Bacteria Exclusion" which states that:

This insurance does not apply to:

Fungi or Bacteria

a.   "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damages.

b.   Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

* * *

C. The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

4.08.   The Amerisure Policies defined "Insured contract" in relevant part as:

That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

4.09. The Amerisure Policies defined "occurrence" as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions."

4.10. The Amerisure Policies defined "Products-completed operations hazard" by stating that it:

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a) When all of the work called for in your contract has been completed.

        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        (c) When that part of the work done at a job site has been put to its other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2)     The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3)     Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

4.11.   The Amerisure Policies defined "Property damage" as:

      a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

4.12.   The Amerisure Policies stated that "Your work":

      a.     Means:

           (1)     Work or operations performed by you or on your behalf; and

           (2)     Materials, parts or equipment furnished in connection with such work or operations.

      b.     Includes

           (1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

           (2)     The providing of or failure to provide warnings or instructions.

4.13.   The claims in the Underlying Complaint are based upon, arise out of, or involve property damage which had occurred and was known to Hardaway and DCVC prior to November 1, 2005, the inception date of Hardaway's coverage from Amerisure, and are excluded from coverage under the Amerisure Policies.

4.14.   DCVC is not an additional insured under the Amerisure Policies.

4.15.   DCVC is not entitled to coverage under the Amerisure Policies for the claims alleged in the Underlying Complaint.

4.16.   The claims in the Underlying Complaint are based upon, arise out of, or involve defects and deficiencies in Hardaway's work as defined in the Amerisure Policies and are excluded from coverage under the Amerisure Policies.

4.17.   The claims in the Underlying Complaint are based upon, arise out of, or involve defects and deficiencies in Hardaway's "designated work" as defined in the 2005 Amerisure Policy and are excluded from coverage under the 2005 Amerisure Policy.

4.18.   The claims in the Underlying Complaint are based upon, arise out of, or involve property damage arising out of, caused by, or attributable to exterior insulation and finish systems as defined in the 2006 and 2007 Amerisure Policies and are excluded from coverage under the 2006 and 2007 Amerisure Policies.

4.19.   The claims in the Underlying Complaint are based upon, arise out of, or involve fungi or bacteria as defined in the Amerisure Policies and are excluded from coverage under the Amerisure Policies.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Amerisure Insurance Company, prays:

1.      That process issue and be served upon Defendants requiring them to answer this Complaint, and thereafter that this matter be advanced on the calendar for a speedy hearing, pursuant to Rule 57 of the Federal Rules of Civil Procedure;

2.      For a declaration that Amerisure is not obligated to continue to furnish legal counsel or otherwise provide a defense on behalf of Hardaway or any defendants

in the Lawsuit now pending in the Circuit Court of the Fourth Judicial District, in and for Nassau County, Florida;

3.      For a declaration that no coverage is afforded under the Policy for the claims and demands made by or against Defendants herein in the Lawsuit now pending in the Circuit Court of the Fourth Judicial District, Nassau County, Florida by virtue of one or more of the terms, conditions, or exclusions in the Policy, and that Amerisure be relieved of any duty to defend, indemnify, or pay on behalf of Hardaway any amounts in connection with the Lawsuit;

4.      For a judgment against Travelers and Valley Forge for reimbursement of all fees and expenses covered by their Policies which have been incurred by Amerisure in the defense provided against the Lawsuit;

5.      For the costs of this cause; and

6.      For such other and further relief to which plaintiff may be entitled under the facts and circumstances of this cause.


                        Respectfully submitted,

                        s/ F. Bradley Hassell
                        F. Bradley Hassell, Esq.
                        Florida Bar No. 260592
                        HASSELL, MOORHEAD & CARROLL
                        149 South Ridgewood Ave., Suite 301
                        Post Office Box 2229
                        Daytona Beach, FL  32115
                        (386) 238-1357
                        FBH@Hassell-Legal.com